OPINION OF THE COURT — by
Chief Justice TURNER.
John S. Miller brought an action of trover, for a slave, against Stephen H. Doxey, in the Superior Court of Adams county. The cause was tried on the plea of not guilty, and a verdict given in favor of Miller, on which judgment was rendered, after a motion for a new trial had been overruled by the court. Pending the trial before the jury, the defendant Doxey, by his counsel tendered a bill of exceptions, which was signed, and sealed,and is to the effect following, to-wit: “It was proved by the plaintiff, that on the 15th day of May, 1815, he purchased of one Swear-ingen, a negro named --■, for, and in consideration of the sum of $367 50, as will appear by a bill of sale, dated the day and year above mentioned and witnessed by -¡-Moore, who saw the said negro delivered into the possession of plaintiff by Swearingen. It was also proved by plaintiff that the defendant in this action, hired the above named negro boy as a hand to work on board of a hoat to New-Orleans, under a belief said boy was a free man. The value of the negro boy, at the time of the sale, by Swearingen to plaintiff, was four hundred dollars.
The evidence introduced by defendant, is written and filed with the *330 papers in the case, and prayed to be taken and considered as facts stated' in this bill. It was proven in the defence that said negro was in the habit of hiring himself out, to labor for his own benefit, by consent of plaintiff, although there was no written permit, as the act of assembly requires, upon which testimony, the court instructed the" jury on the fol lowing points. First. That the evidence introduced by the plaintiff, was (in the opinion of the court,) sufficient to entitle the plaintiff to recover against the defendant, upon the ground that plaintiff’s evidence was of a superior nature to that of defendant’s.
Secondly. The measure of damages should be the value of the negro at the time of conversion, together with the value of said negrbe’s services from the time of legal demand.
Thirdly. That if the special or qualified property be proven in the plaintiff, the defendant cannot set up absolute property in a third person.
Fourthly. That the several acts of assembly, passed under the territorial government, regulating the sale of slaves by their owners, and suffering negroes to hire themselves out to labor without a permit, according to the acts of assembly in such case, made and provided, could not divest the plaintiff in this action of any right acquired under a fair and bona fide contract.” The cause went to the Supreme court on a writ of error, sued out by the defendant Doxey, where the judgment of the court below, was affirmed. Miller sued out execution on the judgment, and the complainant Doxey, thereupon filed his bill in chancery, and set forth, that in the spring of 1815, he hired the negro in question at the Natchez landing, as a boat hand, to work his boat to the city of New-Orleans, that said slave represented himself as a freeman, that soon after his arrival at New-Orleans, the said slave was apprehended as a runaway and committed to prison, was claimed by the said Nelder, who soon after proved to the satisfaction of the committing magistrate, that said slave was his, Nelder’s property, and the magistrate thereupon caused said slave to be delivered to said Nelder; that afterwards, about the 1st May, 1815, he the said Doxey returned to Natchez, where he was sued by said Miller as above set forth, and on the trial at law, he, the said Nelder gave in evidence, the deposition of the said Nelder, proving his right and title to said slave, the depositions of James, the constable, and Nichols,, *331 ■fee magistrate in New-Orleans, who arrested and committed said slave'as aforesaid; and that of W. H. Means, that said Miller claimed said slave by purchase from Thomas Van Swearengen, the person named in the deposition, of said Nelder, and who stole said negro from said Nelder, as he supposed and believed; that conceiving himself to be aggrieved by the judgment of the court before which the action of trover was tried, he took a bill of exceptions and sued out a writ of error to the supreme court, where the judgment was affirmed. The bill further states that the complainant had been informed and believed that Miller had good reason to suspect and did suspect that Thomas Van Swearengen, under whom Miller claimed title, had stolen the negro, aud that he, Miller, so expressed himself at the time he purchased said slave, owing to the smallness of the price, to-wit: $387 50, which he paid Swearingen for him. The bill prays that said Miller and Nelder be made parties to the suit, and answer to the interrogatories contained in the bill, and prays the negro be restored to him, damages for the detention, and for general relief.
The answer of Miller admits that he purchased the slave in question, of Thomas Van Swearingen, in 1815, and took bill of sale, and took possession of him; avers that he had no knowledge or reason to believe that said Swearingen had come unfairly by said slave, that he paid a fair price for him; believed he was Van Swearingen’s property, and that he was recommended to him by two reputable persons whom he names— that he kept said negro in his possession a short time, and never permitted said slave to go at large, or out as a freeman; that sometime after said slave was missing, and on enquiry, traced him to said Doxey’s boat; that he brought suit, and after full investigation by court and jury, and complete defence on the part of Doxey, recovered a verdict and judgment as stated in the bill; denies any knowledge or belief of Van Swearingen being a deserter, of his having stolen the said slave, other than what conjectures might be drawn from the depositions taken by said Doxey and given in evidence on the trial at law; denies any knowledge of Nelder’s title; prays the judgment of the court, whether he shall be barred from .pursuing his claim against Doxey, after a full and complete trial and de-fence at law and a rehearing in the supreme court of the state.
*332 The answer of Nelder also appears, in which he asserts his claim to the slave, states his having runaway, been taken and put to work at Gen', Jackson’s camp, below New-Orleans, in the winter of 1814 and 1815; that about that time, one Swearingen deserted from the army and probably took this slave with him; that some time in the spring following said, slave was taken up in New-Orleans, by his overseer, committed, and finally delivered to him as the owner; that he purchased the said slave of D. S. Swearingen; his title never disputed; there is a general replication to the answers.
The complainant exhibited with his bill the depositions which he took and used on the trial at law, shewing Nelder’s right to the slave, that he purchased him of Daniel S. Swearingen, that he ran away, &c. &c. He also retook the depositions of the same witnesses and also the depositions of D. S.' Swearingen, to prove that he formerly owned the said slave and sold him to Nelder, his bill of sale being exhibited,'also, the deposition of one Andrews, shewing how he understood Nelder to have lost said slave and how he found him.
The Chancellor decreed a perpetual injunction to the judgment at law, whereupon Miller appealed to this court. The bill has no equity on its face. It complains of no surprise, or accident, no fraud in obtaining the judgment at law, except as to Miller’s knowledge, that he was buying stolen property, and that is denied by the answer, and not proved, does not set forth the discovery of new evidence, since the trial, or pray a new trial. The proofs are equally barren of all equity. It is true that there are two witnesses introduced, in addition to those examined on the trial at law; but the complainant shewed in the exhibits to his bill that he knew that Nelder claimed title under Daniel Swearingen, and, if he deemed his evidence important, he should have taken his deposition. This evidence is' merely cumulative. That of the new witness Andrews, is almost entirely hearsay, and is to the same purpose, of the like import of that of Nelder himself. So that the case is wholly cognizable at law, in all its aspects, whether we consult the bill, the answers, or the proofs; and however we doubt the legality of Miller’s recovery at law, we cannot give Doxey relief here, without violating established principles. In the language of the learned'Chancellor of New York, '“it is *333 a settled principle, that a party will not be aided, after a trial at law, unless be can impeach the justice of the verdict, or report, by facts or on grounds of which he could not have availed himself, or was prevented from doing it, by fraud or accident, or the act of the opposite party, unmixed with, negligence or fault on his part. This point has been so often ruled, that it cannot be necessary or expedient to discuss it again, and it is one by which-I mean to be governed. In some of the cases in this court, referred to by the defendants counsel, it was shown to be the rule of the English Chancery, and it appears also to have been frequently, noticed and recognized in the courts of equity in this country. 7 Cranch.338. 3Dessaussure 324,325. 4 Meneford, 155. If the principle was to be materially relaxed, the departure from it, as I apprehend, would soon be perceived and felt, to be a great public grievance by encouraging negligence, protracting litigation, exhausting parties, and drawing within the cognizance of this court, the general review of trials at law.” 3 John. Ch. Rep. 356, 357.
What is this case, but a direct attempt at an appeal to the court of chancery, to reverse the judgment at taw, rendered in the supreme court; on the same facts, the same evidence, which was before that court. The chancery court has no such power. If, in future'cases we shall have oc casion to review judgments at law let the courts of law do it; and if it is found that the court has at any timé departed, from known and established principles of law, the judges, when new cases occur, of a similar nature, will decide according to principles, and not feel bound by a mere ‘precedent. How contradictory do the cases appear, both at law and in equity, in England; and also in the several States? Look at the early cases as reported in North Carolina and in other States; Virginia, &c. and compare them with later decisions in the same courts, and it will be perceived that this course has been invariably pursued. We respect precedents, but we are bound by principles. The remarks of Lord Mansfield on this subject, are familiar to every lawyer who has read Burrow and Durn and East. But, although the courts will adhere to the principles of law, and not feel bound by a mere precedent, it has never been considered, that even the most erroneous judgment can be reversed by the court which gave the judgment, after the term passed in which such judgment *334 was rendered, and it is equally well settled that it is not within the pro* vince of a court of chancery to correct the errors of courts of law. Hard indeed is the case of every man who may chance to have his rights violated by judicial decisions, even when this happens by his own negligence, but especially when it occurs from the ignorance of the judges who try his .cause. But in such cases, there is no remedy. There is no such thing as absolute perfection in man. We are all liable to err; all that is required of any man, whatever may be his station in society, is, that he decide honestly, according to the best of his skill and understanding.
Cases at law may be re-examined in various ways; 1st. By new trials; ’2d. By motion in arrest of judgment; and 3dly. By appeal or writ of error to the supreme court. When, finally decided, the cause is at an end. Execution must then be done.
Likewise in cases in chancery, various modes of re-examination; reconsideration are provided; 1st. on motion to dismiss the bill; 2d. on motion to dissove injunctions; 3d. on petition for a re-hearing; 4th. on bill of review, and supplemental bill, and 5th. by appeal to the supreme court. But, when the known remedies for re-consideration, and re-examination have been exhausted, and the cause is finally decided, by a court in the last resort, let it be final. . It is final, and there is no power to reverse it. How strange it must seem, even to the most common understanding, that after a law case has been solemnly determined in the supreme court, the inferior court of chancery shall step in, at the instance of one of the parties, and stop the execution, re-examine the decision of the supreme and reverse it! If this doctrine prevails, there is not a decision pronounced in this court, which may not, hereafter be reversed, especially if the party complaining.will wait until those changes shall take place, which must inevitably happen on every bench. .
The case of the city of Natchez vs. The Trustees of Jefferson College, tried in this court, some. years ago, shews conclusively how much this court is disposed to adhere to their decisions given in the same cause. In that case evidence had been ruled out, bills of exception taken; and on motion for judgment on a special verdict, the cause was referred to the supreme court, where judgment was given for the plaintiff. *335 The defendant sued out a writ of error, which was dismissed, on the ground that the case had been decided, as aboye, by the same court.
The present case is infinitely stronger than that; because, in that, the grounds on which the writ of error were sued out were not, and could not be examined on the motion for judgment on the special verdict. — If we decide this case in favor of the complainant, it will be a precedent, set by five judges of the supreme court, after more investigation, argument and consideration than ever fell to the lot of any other cause in this court; and will lay a foundation on which might be built up a system of litigation on the chancery side of this court, which all wise judges and chancellors in every age and country have endeavoured to prevent. I cannot lend my name to such a consequence. It is better that Doxey, and Miller, and all others concerned be ruined, than that so dangerous a precedent be so solemnly established.
I cannot, consistently with the sense of duty which I entertain, forbear placing my solemn convictions on record, that by the law of the land, the complainant has no relief at this court; that his defence against Miller’s demand, is purely legal; that it was heard and decided at law in the court of last resort; that he has not made a case in his bill, for chancery jurisdiction, nor has he aucceeded better in his proofs. He has brought in no new evidence. He has introduced two additional witnesses; but their evidence is merely cumulative, and not even newly discovered. One of them, Daniel S. Swearingen, is a party interested to sustain his own title to this slave, whom he sold to Nelder, and the other, Andrews, whose testimony consists principally of what he heard Nelder say; Nelder, who was one of complainant’s witnesses in the trial at law, and is made a defendant now, for what purpose, is not stated, except to restore the negro to Doxey, who shews or sets up no title, but strangely prays in his bill, that said slave be restored to him.
If Doxey, when sued by Miller, knowing as he did of Nelder’s claim to the slave, had filed a bill and interpleaded in due season, and had set forth that Miller aud Nelder each claimed this slave, then indeed we might have sustained Doxey’s defence, and have done justice to all the parties. But no such case as this is presented. It is not the province of the court to make cases for parties. The allegata and probata must cord *336 respouc!; and the judgment of the court must respond to, and he based on the pleadings and the proofs made in the cause.
Doxey chose to risk his defence at law. He defended himself there. He offered evidence to prove, that, although John S. Miller had purchased the slave in question for a valuable consideration; although he, Doxey, had improperly and unlawfully taken this slave into his employment, in the hazardous employment of navigating the river Mississippi, and removed him beyond the jurisdiction of the courts of the state where ho found the slave, and where his master and owner resided, yet, that Nel-der was the real owner, and had recovered possession of this slave. But the jury found Doxey to have committed a wrong towards Miller. The court refused to grant a new trial and gave judgment against the plaintiff; and the supreme court, on being' appealed to, •affirmed the judgment.— The complainant, DoxGy, had three full hearings on all the law and all the equity of his defence, — first before the jury, then on a motion for a new trial, and finally in the supreme court of the state. ,
Let the decree of the chancellor be reversed, the injunction be dissolv» ed, and bill dismissed, at the costs of the Apeltee.
Judges Black, Cage and Nicholson concur.-